[No. 27388. Department Two. March 20, 1939.]

ERVIN LEWIS, *by Trueman Lewis, His Guardian, Appellant,* v. HENRY A. BERTERO *et al., Defendants,* GREAT LAKES CASUALTY COMPANY, *Respondent.*[1]

[1]Reported in 88 P. (2d) 433.

*Wm. A. Johnson* and *Verne C. Henry,* for appellant.

*Poe, Falknor, Emory & Howe,* for respondent.

BEALS, J.—Ervin Lewis, a minor, by his guardian, during the month of January, 1937, sued Lewis Fasce, Henry A. Bertero, and others, asking judgment for damages on account of personal injuries received by plaintiff in an automobile accident which occurred in Snohomish county, December 9, 1936. Trial of the action to a jury resulted in a verdict in plaintiff's favor for the sum of $3,300, and judgment was subsequently entered pursuant to the verdict.

The judgment remaining unsatisfied, the plaintiff sued out a writ of garnishment directed to Great Lakes Casualty Company, a corporation, plaintiff contending that the garnishee had, prior to the accident, written a policy of liability insurance protecting the defendant owners of the motor vehicle which was concerned in the accident, which policy plaintiff contended rendered the garnishee corporation liable to plaintiff for the amount of plaintiff's judgment. The garnishee answered, denying liability, and its answer was controverted by an affidavit filed by plaintiff.

The issues between plaintiff and the garnishee being thus made up, the matter was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in favor of the garnishee, followed by a judgment discharging the writ of garnishment and relieving the garnishee from all liability in the premises. Plaintiff's motion for a new trial having been denied, plaintiff has appealed from the judgment in favor of the garnishee.

No question concerning the judgment against the defendants in the action is presented, the case at bar concerning merely appellant's contention that respond-

ent (the garnishee) is liable to appellant under a policy which it is admitted respondent wrote.

Error is assigned upon the admission in evidence of two exhibits, and upon the overruling of appellant's objection to certain questions propounded to a witness; upon the entry of the findings of fact and conclusions of law signed by the court, and upon the refusal of the court to make findings and conclusions proposed by appellant. Appellant also assigns error upon the entry of judgment in respondent's favor.

In such a proceeding as this, the pleadings disclose little concerning the claims of the respective parties. From the evidence, the following may be considered undisputed facts:

Appellant has an unsatisfied judgment against Henry A. and Alma Bertero, and Lewis and Beatrice Fasce, copartners engaged in business as Everett Garden Company, and against one Wesley Kennaugh; the judgment having been recovered in an action for personal injuries brought by appellant, the injuries having been suffered as the result of an automobile collision, for which the defendants were held responsible.

The accident occurred about 4:46 o'clock on the afternoon of December 9, 1936. For some time prior to this date, Miss Dorcas Clark, residing in the city of Everett, had represented respondent, an insurance company, as its local agent in writing insurance, including automobile liability policies. Miss Clark also represented some other insurance companies. She had been acquainted with Messrs. Bertero and Fasce for many years, during which period she had written for them insurance of various sorts.

At the time of the accident, Messrs. Bertero and Fasce (who will hereinafter be referred to as defend-

ants) owned three motor vehicles—a passenger car, a truck (both of which were in frequent use), and another old Mack truck, which is the vehicle with which we are principally concerned. Defendants carried liability insurance upon the passenger car and the truck which was in general use, but had not protected the Mack truck, Mr. Fasce testifying that, when he used the truck on the highway, he took his own chances. He further testified that he bought the truck in 1929 and used it until about 1934, after which he used it infrequently. The truck was not used on the road from January 1, 1936, up to August 22nd following. About the latter date, Mr. Fasce, thinking that he would use the truck, purchased a license for it, and used the truck for a short time. It appears that, during this period of use, the owners were protected by a "binder," which Miss Clark issued.

December 10, 1936, respondent wrote for defendant Fasce a policy of liability and property damage insurance. This policy was prepared by Gould & Gould, respondent's Seattle representative, pursuant to instructions from Miss Clark, and was mailed to her. December 11th, Miss Clark wrote Gould & Gould a letter, which included the following:

"We have received policy No. Great Lakes No. 39844 Lewis Fasce dated Dec. 10th, and as this was ordered and paid for Dec. 7th, will you re-issue the policy correctly dated."

Respondent's Seattle agent then prepared a new policy in favor of defendant Fasce, dated December 7th, substituting it for the policy dated December 10th. This second policy, of course, antedated the accident. While some correspondence ensued between Miss Clark and Gould & Gould, respondent never learned of the accident until about January 20th, when Miss Clark informed the Seattle office that a copy of the summons

and complaint in this action had been delivered to her by defendants.

We shall now consider the evidence as to matters more or less in dispute.

The insurance was first ordered by Miss Clark in a letter to Gould & Gould, dated December 7th, in which she wrote them as follows:

"Lewis Fasce, Lake Stevens, Wash., requested liability and property damage for 1½ ton Mack, 1922 truck
S No. 323030
M 293x21,

| $2000.00/$10,000. | Liability Limits prem. | $13.00 |
| | Property Damage | 9.00 |

. . ."

This letter was received at the Seattle office December 10th, and the evidence establishes the fact that the letter was not written on the seventh, the day it bears date, but was written on the ninth, the day of the accident, and after Mrs. Bertero, Mr. Fasce's daughter, one of the defendants, had informed Miss Clark over the telephone that an accident had occurred. Miss Clark at first testified that she knew nothing of the accident until the morning of December 10th, but finally admitted that she had been informed of the accident before six o'clock on the evening of the ninth. It is also admitted that, although Miss Clark, respondent's local agent, knew on December 9th that an accident had occurred, she failed to advise respondent of that fact until an action was commenced against defendants, about January 20th, when she told Gould & Gould, by telephone, that a suit had been commenced, and mailed them the summons and complaint.

In Miss Clark's letter of December 11th, above referred to, she stated directly that the policy was paid for December 7th. The receipt which she gave Fasce bears date December 9th, and reads as follows:

"Received from Lewis Fasce, Twenty-two & No/Dollars ($22.00) For Mack truck — Personal Liability, Property Damage. How Paid—Cash

CLARK INVESTMENT Co.
By D. L. Clark"

Miss Clark admitted on the trial that the money was actually paid, not on December 9th, but on the tenth, after she had been informed of the accident. She endeavored to explain the erroneous date on the receipt upon the ground of inadvertence. In response to a question by the court, "Was the money received on the ninth by you?" Miss Clark answered, "The money was received by me on the tenth."

It also appears from the testimony of Miss Clark and Mr. Fasce that, in August preceding the accident, temporary insurance by way of a binder was, by Miss Clark, issued on the Mack truck, at Mr. Fasce's request; that no insurance policy was ever ordered or issued; and that no premium was ever demanded or paid, nor was any report made to respondent advising respondent that it had assumed any liability in case of an accident. Apparently, the binder was later canceled, and as no claim had accrued thereunder, nothing more was said about the matter, but it clearly appears that Mr. Fasce had enjoyed the benefit of temporary protection by liability insurance for which he paid nothing.

The Mack truck was owned by a partnership consisting of Messrs. Fasce and Bertero, yet apparently Mr. Fasce represented the truck to be his own property and procured insurance thereon in his own name. Mr. Bertero was his son-in-law, and the two families were intimately associated one with the other. The accident in which appellant was injured resulted in injuries to several other persons, who subsequently sued defendants, with which actions we are not here concerned, but manifestly the matter of whether or not

defendants were protected by liability insurance was a matter of great concern to them, immediately after the accident, as they were threatened with three or four claims for damages.

Miss Clark testified that, on the afternoon of December 6th, she visited defendants' home, and that Mr. Fasce then told her to put insurance on the truck, because they would soon be using it. This testimony was corroborated by that of Theodore Anderson, who stated that he was with Miss Clark at Mr. Fasce's home. The trial court, in orally summing up the evidence, stated that he believed that, on Sunday, December 6th, there was some negotiation between Miss Clark and defendants, looking toward the issuance of insurance covering the Mack truck. As stated by the trial court, however, there is no evidence that, at this time, the amount of the insurance to be written was fixed, or that anything more happened than an expression by Mr. Fasce of the intention to see that he was protected against liability, in case of the use of the truck. Mr. Fasce testified that he wanted to have insurance issued on the truck before he again put it on the road; but he also testified that, at previous times, he had operated the truck without insurance, taking his own chances of liability.

Concerning the protection of the truck by a binder, Mr. Fasce testified as follows:

"A. From the 22nd of August we were supposed to have a binder on that. Q. You never got a policy? A. No, I never seen no policy. Q. Never paid any premium? A. Never paid no premium for that, no. Q. Did you ever get a bill for a premium? A. No, I never got no bill. Q. When did that binder stop? A. I don't know. After that binder there wasn't a word said until she came up on Sunday on the 6th, and I told her to keep the insurance on it—to insure it again."

Later, he testified concerning the conversation between himself and Miss Clark on the afternoon of December 6th:

"A. I told her we wanted the insurance on that truck. She asked me if I want to keep it on, and I said 'yes.' Q. She asked you what? A. She asked me if I was going to use the truck again, 'if you're going to keep on with the insurance, if you're going to run the truck', and I said 'yes'. I said, 'Yes, we want the insurance on the truck'. Q. What did she say? A. She said, 'All right, then, I'll have it on to protect you'. Q. Was anything else said? A. Nothing else said."

All this might have applied to further binder coverage.

Mr. Fasce also testified concerning this matter:

"Q. And you had this binder on the 22nd day of August? A. 22nd of August, it was supposed to be a binder on that truck. Q. Do you think that was still in force on the 5th day of December? A. I believe it was still in force and she come out there and asked me if I was still going to use the truck and I told her yes. Q. Just a minute, now, Mr. Fasce. I am asking you some questions. We will get to that later. You think then that this binder of August was still in force on December 5th? A. Well, I couldn't tell you if she kept that up or not. I believe it should be. I kind of thought it was in my notion. Q. You thought she was keeping it up, didn't you? A. I thought she was keeping up the binder. Q. Were you worrying about it? A. I paid no attention to it at all. . . . A. I didn't figure I was taking any chances. I thought I was protected. Q. You thought she was going to take care of this binder right on through? A. I thought the binder was good, and on the 6th she came out there and she told me if I was going to use the truck and I says, 'yes', and she was going to take care of the policy; no binder that time. Q. She told you a regular policy? A. She told me she was going to give me a regular policy on that truck."

No other witness, testifying to the conversation of December 6th, stated that any particular kind of insurance was referred to. Miss Clark merely stated that Mr. Fasce "said to put the insurance on the truck." She several times referred to the matter as "the insurance."

Mr. Fasce's testimony is very unsatisfactory, in connection with this and other matters. He stated that he believed he was enjoying protection for several months under a binder, when he was paying nothing for the insurance. He testified that he had not used the truck for some time, and he does not testify that he expected to use it to any considerable extent in the future. He gives no reason for suddenly making up his mind to take out an expensive policy, when he had previously operated the truck entirely at his own risk, and had later used it under the protection of the binder, for which he paid nothing. To say the least, this portion of his testimony is not convincing.

Appellant put on the stand two witnesses only— Martin Poole, an agent of respondent, and Theodore Anderson, who testified that, on the afternoon of December 6th, he had gone with Miss Clark to Mr. Fasce's home, and had heard the matter of insurance covering the truck discussed. Miss Clark, Mr. and Mrs. Fasce, and Mrs. Bertero were called as witnesses by respondent. The interest of the three witnesses last named was, of course, adverse to that of respondent, and examination of Miss Clark's testimony convinces us that she was at least a hostile witness.

Mrs. Bertero's testimony is unsatisfactory. Asked if she telephoned Miss Clark on the afternoon of December 9th, she stated, "I don't recall"; neither did she remember whether or not she was at home on that afternoon. She distinctly remembered the con-

versation with Miss Clark on the afternoon of December 6th, but remembered little else.

Respondent's counsel represented defendants on the trial of the damage suit, under a reservation of right to contend that respondent was not, in fact, liable upon the policy.

Appellant contends that respondent is bound by the acts of its agent, Dorcas Clark, in procuring the issuance of the policy, and while conceding that respondent might not be liable in case the evidence should disclose actual collusion between defendants and Miss Clark, argues that no such collusion was shown. Appellant relies upon the rule that the fraud of an agent does not alter the legal effect of his knowledge with respect to his principal in regard to third persons who had no connection with the agent in relation to perpetration of the fraud. Respondent, on the other hand, contends that the policy was procured by fraud and concealment participated in by Dorcas Clark, as respondent's agent, on the one hand, and Mr. Fasce and the other defendants on the other, and that, as the result of this fraud and collusion, respondent was induced to issue its policy dated back to December 7, 1936.

The trial court, as appears from the oral summation at the close of the case, was clearly of the opinion that the evidence showed collusion and fraud, participated in both by Miss Clark and defendants, the insured, and that common honesty required that the fact that there had been an accident which might result in possible liability on the part of defendants, should have been disclosed to respondent before the issuance of the policy which was dated back to December 7th, and upon which liability is sought to be imposed upon respondent.

Miss Clark certainly grossly imposed upon her prin-

cipal. She admitted antedating her first letter to Gould & Gould, and swore that she did not receive definite notice of the accident until December 10th, later admitting that Mrs. Bertero, late on the afternoon of December 9th, had telephoned her that an accident had occurred. The conclusion is irresistible that Miss Clark wrote the letter bearing the false date, after her telephone conversation with Mrs. Bertero. Miss Clark's failure to inform her principal of the fact that there had been an accident until appellant started this action late in January, is also significant, as is the antedating of the receipt which she gave Mr. Fasce. Her statement to Gould & Gould, contained in her letter of December 11th, to the effect that the insurance had been paid for December 7th, was false, and her failure to then advise respondent that an accident had already happened, which would undoubtedly give rise to a claim under the policy if the same should be dated December 7th, is most significant.

Bad faith on Miss Clark's part was clearly shown. The only possible question arises in connection with appellant's argument that the evidence does not justify the trial court's conclusion that defendants were also guilty of bad faith, and participated in the fraud.

In the recent case of *Paulson v. Montana Life Ins. Co.*, 181 Wash. 526, 43 P. (2d) 971, this court quoted Rem. Rev. Stat., § 7032 [P. C. § 2908], which, referring to the writing of insurance, requires that all persons participating in that important activity

". . . shall at all times be actuated by good faith in everything pertaining thereto; shall abstain from deceptive or misleading practices, and shall keep, observe, and practice the principles of law and equity in all matters pertaining to such business. . . ."

In the case cited, this court, referring to the cases of *Turner v. American Casualty Co.*, 69 Wash. 154, 124 Pac. 486, and *Eaton v. National Casualty Co.*, 122 Wash. 477, 210 Pac. 779, said:

"These cases mark the utmost limit to which we have gone, but it will be at once apparent that the principle announced in these cases falls far short of holding that, where the insured and the agent collude together to defraud the principal, the principal is nevertheless bound. Fraud vitiates every contract into which it enters, and the rule of law which imputes to the principal the knowledge possessed by the agent does not apply where a fraud has been committed by collusion of the agent with the insured. . . .

" 'The rule which imputes to the principal the knowledge of his agent is, as has been seen, commonly based upon the legal presumption that the agent has done his duty by communicating it to his principal,—a presumption which, it is said, is demanded by a sound public policy for the protection of those who deal with the agent. Obviously no policy requires that such a presumption shall be made for the protection of a person who has conspired with the agent to defraud the principal and who now seeks the benefit of a presumption that a duty has been performed which he himself was interested in having violated.' 2 Mechem on Agency, (2d Ed.) § 1826."

We also quoted from the supreme court of the United States, in the case of *Mutual Life Ins. Co. v. Hilton-Green*, 241 U. S. 613, 60 L. Ed. 1202, 36 S. Ct. 676, in which, referring to the general rule that an innocent third party may presume that an agent will perform his duty, the court said: "The rule is intended to protect those who exercise good faith and not as a shield for unfair dealing."

The facts of this case bear some analogy to those in the case of *Associated Indemnity Corp. v. Del Guzzo*, 195 Wash. 486, 81 P. (2d) 516, which case is relied

on by respondent, and to some extent supports respondent's position.

Respondent assumed the burden of proving collusion and fraud between defendants and its own agent, Miss Clark; all this under the rules of evidence governing cases involving fraud. Respondent labored under the additional difficulty of proving its case by the testimony of hostile and, indeed, adverse witnesses.

In the recent case of *Knutsen v. Alitak Fish Co.*, 176 Wash. 169, 28 P. (2d) 334, this court, referring to an attempt to show fraud, quoted from 2 Cooley on Torts (4th ed.), § 349, as follows:

"Fraud is never presumed, and the party alleging and relying upon it must prove it. This, however, is one of those rules of law which is to be applied with caution and circumspection. 'So far as it goes, it is based on a principle which has no more application to frauds than any other subject of judicial inquiry. It amounts but to this, that a contract, honest and lawful on its face, must be treated as such until it is shown to be otherwise by evidence of some kind, either positive or circumstantial.' Fraud is therefore as properly made out by marshaling the circumstances surrounding the transaction, and deducting therefrom the fraudulent purpose, when it manifestly appears, as by presenting the more positive and direct testimony of actual purpose to deceive; and, indeed, circumstantial proof in most cases can alone bring the fraud to light, for fraud is peculiarly a wrong of secrecy and circumvention, and is to be traced not in the open proclamation of the wrongdoer's purpose, but by the indications of covered tracks and studious concealments. And while it is often said that to justify the imputation of fraud, the facts must be such as are not explicable on any other hypothesis, yet this can mean no more than this, that the court or jury should be cautious in deducing the fraudulent purpose; for whatever satisfies the mind and conscience that fraud has been practiced is sufficient."

In the earlier case of *American Sav. Bank & Trust Co. v. Bremerton Gas Co.,* 99 Wash. 18, 168 Pac. 775, this court said: `

"Fraud is a thing to be described, rather than defined. Deception may find expression in such a variety of ways that most courts have studiously avoided reducing its elements to accurate definition. Human foresight is not sufficiently acute to anticipate the secret and covert methods of the artful and designing or of those who endeavor to reap where they have not sown. Once let it be known what the courts consider fraudulent and those engaged in its perpetration will busy themselves in inventing some means of evasion. The courts, therefore, should content themselves with determining from the facts of each case whether fraud does or does not exist. While fraud is not lightly to be inferred, it does not follow that the inference of fraud cannot be gathered from surrounding circumstances, provided they are of sufficient strength and cogency to overcome the presumption of honesty and fair dealing."

The cases of *Hansen v. Continental Casualty Co.,* 156 Wash. 691, 287 Pac. 894, and *Reilly v. New York Life Ins. Co.,* 182 Wash. 460, 47 P. (2d) 840, should also be read in connection with this phase of the case.

It cannot be argued in appellant's favor that defendants made a full and fair disclosure of the facts to Miss Clark, thereby binding respondent, because the record clearly shows that defendants were acting in collusion with Miss Clark, and as stated by the supreme court of Massachusetts, in the case of *Innerarity v. Merchants' Nat. Bank,* 139 Mass. 332, 1 N. E. 282, 52 Am. Rep. 710:

"While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not com-

municate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating."

██ It cannot be held that respondent is liable under an oral contract for insurance, based upon the conversation between Miss Clark and defendants on the afternoon of December 6th, as the facts would not support a finding that any definite contract for any particular amount or character of insurance was made that day. Upon the trial, appellant's counsel stated that it was appellant's contention that the policy which was issued carried into effect the previous oral negotiations, and was the one that created the liability.

Appellant assigns error upon the admission in evidence of two applications, signed by Mr. Fasce, for licenses on the Mack truck. Neither these exhibits nor copies thereof are in the record, and, in the absence of the exhibits, we cannot pass upon this assignment of error.

██ Respondent called as its witness Martin Poole, who had previously testified for appellant, and who stated that he was in respondent's employ, in charge of the policy writing department of Gould & Gould. Over appellant's objection, the witness was permitted to testify concerning a conversation over the telephone with Miss Clark, about January 20, 1937, when Miss Clark called the Seattle office to convey information of the fact that appellant had sued defendants. This conversation was admissible as bearing upon Miss Clark's conduct.

The other assignments of error go to the merits, and have been already discussed.

This is one of those cases in which the conclusion of the trial judge, who saw and heard the witnesses,

carries great weight. Appellant earnestly contends that the evidence does not support a finding in respondent's favor. The statement of facts is not long, and we have carefully examined it, in the light of appellant's arguments. We are convinced, however, that it cannot be held that the evidence preponderates against the finding of the trial court.

The judgment appealed from is affirmed.

BLAKE, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.

