[No. 28261. Department One. January 24, 1942.]

LEWIS FASCE et al., *Appellants,* v. DORCAS CLARK, *Respondent.*[1]

*William A. Johnson, F. A. Clanton,* and *Verne C. Henry,* for appellants.

*Evans, McLaren & Lane,* for respondent.

DRIVER, J.—By this action, Lewis Fasce, his son-in-law and copartner, Henry Bertero, and their wives, sought to recover damages from Dorcas Clark, an in-

[1]Reported in 121 P. (2d) 357.

surance broker doing business as Clark Investment Company, for the breach of an alleged oral contract to procure public liability insurance for a Mack truck owned by the plaintiffs. The superior court entered findings, conclusions, and judgment in favor of the defendant, and the plaintiffs appealed.

For many years prior to December 9, 1936, appellants had operated a truck garden near Everett. They owned a Studebaker truck, which was in daily use, and a Mack truck, which they used only on infrequent occasions. The respondent, who had been doing all their insurance business, in February, 1935, had sold them a policy for their Studebaker with "five and ten" limit public liability and five thousand dollar limit property damage insurance. In August, 1936, when appellants thought they might have some use for the Mack truck and had procured a state license to operate it, respondent put on a binder coverage, but the truck was not used and this temporary insurance was permitted to lapse, appellants paying no premium therefor.

On December 9, 1936, as the Mack truck was being towed along a public highway, another vehicle collided with it, and the occupants of the latter were injured. One of them brought an action against Fasce and Bertero, appellants here, and recovered a judgment in the amount of $3,300, which was affirmed in *Lewis v. Bertero*, 194 Wash. 186, 77 P. (2d) 786. The judgment was not satisfied, and Lewis, the judgment creditor, sued out a writ of garnishment against the Great Lakes Casualty Company, a corporation (for convenience, hereinafter called the insurance company), on the theory that, as it had issued a policy of public liability insurance on the Mack truck, which was in force at the time of the accident, the insurance company was liable for the plaintiff's judgment. In *Lewis v. Bertero*, 198 Wash. 296, 88 P. (2d) 433, this

court held that no valid contract of insurance had ever been consummated. The facts upon which the holding was based, as found by the trial court and affirmed on appeal, are fully reviewed in the opinion. We shall only briefly summarize them here.

Miss Clark (respondent in this case) testified in the garnishment proceedings that, on December 6, 1936, at Mr. Fasce's home, she had a conversation with him in which he told her to put insurance on the Mack truck as he would soon be using it. Mr. Fasce testified that he wanted insurance placed on the vehicle, but he also stated that, at previous times, he had operated it without insurance. There was no evidence that, in their conversations, Miss Clark and Mr. Fasce had specified the amount or kind of insurance to be written.

Miss Clark ordered a public liability and property damage insurance policy for the Mack truck from the Seattle agents of the insurance company in a letter dated December 7, 1936, which the agents received on December 10th. It was established by the evidence, however, that the letter was actually written on December 9th, the day of the accident and after Miss Clark had been informed that it had occurred. The Seattle agents wrote a policy, dated December 10th, and forwarded it to her, but Miss Clark immediately sent it back to them with a letter in which she stated: " . . . as this [policy] was ordered and paid for Dec. 7th, will you re-issue the policy correctly dated." (The written receipt which Miss Clark had given Mr. Fasce for the premium bore the date of December 9th.) A new policy, dated December 7th, was issued and delivered to the insured. Miss Clark did not inform the insurance company or its Seattle agents that the Mack truck had been involved in an accident until after the damage action had been started.

This court concluded, in the cited garnishment case, that "Bad faith on Miss Clark's part was clearly shown," and that Mr. Fasce and his copartner (defendants there) had acted in collusion with her to defraud the insurance company (garnishee defendant and respondent). With reference to the legal effect of the conversation of December 6th between Mr. Fasce and Miss Clark, we said:

"It cannot be held that respondent [insurance company] is liable under an oral contract for insurance, based upon the conversation between Miss Clark and defendants on the afternoon of December 6th, as the facts would not support a finding that any definite contract for any particular amount or character of insurance was made that day."

The case at bar is based upon the theory that the conversation of December 6th constituted a binding agreement *to procure* public liability insurance for the Mack truck; that respondent, Miss Clark, breached the contract by failing effectively to provide such insurance; and that she is liable to appellants for the amount of the judgment recovered against them in the damage action.

The trial court, in this case, concluded that the appellants were not entitled to recover for the following reasons: First, they failed to sustain the burden of proving that a contract to procure insurance had been consummated; second, that, even if appellants had established such a contract, the judgment in the prior garnishment action would bar or estop them from asserting it; and, third, the entire transaction was vitiated by the misrepresentation and fraud which the parties employed to deceive the insurance company and obtain insurance.

Appellants, by their various assignments of error, in effect, have challenged each of the trial court's

three co-ordinate grounds of decision. We shall first consider the question whether appellants proved that there was an oral contract to procure insurance. In the present case, in order to show that the terms of the contract were sufficiently definite to make it legally enforcible, appellants undertook to prove that, in the conversation of December 6th, Mr. Fasce and respondent stated and agreed that the insurance policy which she was to place on the Mack truck was to be the same as the insurance on appellants' Studebaker truck. In the present case, they were the only witnesses who testified with reference to the conversation in question. Respondent, who was called by appellants as an adverse witness, testified:

"Q. On December 6th you talked to him [Mr. Fasce] about insurance? A. Yes. Q. Where? A. Out at his place. Q. You went out there? A. Yes. Q. What was the conversation with reference to insurance on the Mack truck? A. I said, 'are you going to be using your truck now, are you going to do this work' and he said, 'I think so, you had better put it on.' Q. Were those the exact words that were used? A. I couldn't say they are exact words, they are a good part."

Respondent's attention was then directed to certain testimony which she gave at the trial of the garnishment action, and she was cross-examined at length by appellants' counsel. The following appears to be the most favorable admission which they succeeded in eliciting from her:

"Q. Do you recall on December 8th you talked with Mr. Fasce or Mr. Bertero? A. Of course it was on Sunday he distinctly told me to put this insurance on and I said, 'Yes, I would take care of it.' "

Miss Clark testified that nothing was ever said in the conversations of the parties about procuring an insurance policy for the Mack truck like the one on

the Studebaker truck, although she did indicate that, when, on December 9th, she ordered the policy for the former, that was her "understanding."

Appellant Fasce testified in part as follows:

"Q. On December 6th, 1936, did you see Miss Clark? A. She came up to the ranch. Q. Who was with her at the time? A. Theodore Anderson. Q. Did you have any conversation then about any insurance? A. She asked me if I wanted insurance on the truck and I said 'yes, keep it covered all the time until she was notified.' Q. Did she say she would? A. Yes, she said she would. Q. What was said, Mr. Fasce,—what kind of insurance were you talking about? A. Same as I had on the Studebaker, $5,000.00/$10,000.00, public liability and property damage. Q. Liability and property damage, the same as you had on the Studebaker? A. Yes. Q. Did Miss Clark state whether she would procure it or not—did she state whether or not she would get you the insurance? A. She said she would get the insurance, I would be protected and I didn't need to worry about it. Q. Did you tell her when you were going to use the truck? A. I told her I might use it any time, I wanted it covered so I could use it any time I wanted to. Q. On the 7th, did you go in to see Miss Clark? A. On Monday morning, yes. Q. Were you going to talk to her about insurance? A. I told her to be sure to have it done and she said she will."

On cross-examination, Mr. Fasce stated:

"Q. You testified in court in the law suit against the Great Lakes Insurance Company, didn't you? A. Yes. Q. Do you remember that? A. Yes. Q. Do you remember being asked these questions and giving these answers, I am reading from Page 72:

" 'On December 6th what happened about this insurance? A. It was on Sunday she came up to the ranch. Q. Was anything said about insurance? A. I told her we wanted the insurance on that truck. She asked me if I wanted to keep it on, and I said "yes." Q. She asked you what? A. She asked me if I was

going to use the truck again, "if you're going to keep on with the insurance, if you're going to run the truck," and I said "yes." I said, "Yes, we want the insurance on the truck." Q. What did she say? A. She said, "All right, then, I'll have it on to protect you." Q. *Was anything else said? A. Nothing else said.'*

"Do you remember testifying to that? A. Yes. Q. *Nothing said about any Studebaker policy? A. Not on Sunday,—no.* Q. You haven't paid anything on that judgment at all?. A. On Monday morning. Q. And at the same time, Mr. Fasce, didn't you testify that you went in to see her the next day and you said,

" 'The next day I happened to be in town and I stepped in there and I told her, has she got the insurance on it? That was on Monday. She says, "Yes, you're protected." Q. So you went on home again? A. I went on home and minded my business. Q. *That is all that was said about it then?* A. Yes.'

"A. *Yes.* Q. *Nothing said about any Studebaker policy? A. No."* (Italics ours.)

In its written memorandum decision, the trial court made this observation:

"The plaintiffs [appellants] have failed to sustain the burden of proof of the formation of any agreement between the parties for the procurement by the defendant [respondent] of automobile insurance for the plaintiffs. The Court is unable to find that any definite agreement was reached between the parties. Their testimony is full of contradiction and is not clear and definite. *There are such inconsistencies in the testimony as to lead the Court to conclude that neither the plaintiff nor the defendant gave credible evidence."* (Italics ours.)

This court seems to have reached a somewhat similar conclusion with reference to Mr. Fasce's testimony in the garnishment case. We think the following language of the opinion (*Lewis v. Bertero,* 198 Wash. 296, 304, 88 P. (2d) 433, *supra*) is equally applicable here:

"Mr. Fasce's testimony is very unsatisfactory, in connection with this [the conversation of December 6th] and other matters. He stated that he believed he was enjoying protection for several months under a binder, when he was paying nothing for the insurance. He testified that he had not used the truck for some time, and he does not testify that he expected to use it to any considerable extent in the future. He gives no reason for suddenly making up his mind to take out an expensive policy, when he had previously operated the truck entirely at his own risk, and had later used it under the protection of the binder, for which he paid nothing. To say the least, this portion of his testimony is not convincing."

We also subscribe to the remark in the cited opinion, p. 310, that "This is one of those cases in which the conclusion of the trial judge, who saw and heard the witnesses, carries great weight." The record as a whole supports the trial court's finding that appellants failed to prove the consummation of a contract to procure insurance. Since we thus sustain the first ground of decision of the trial court, it is unnecessary for us to consider the remaining grounds.

Judgment affirmed.

ROBINSON, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.