HENRY PLUMMER, by his next friend, *vs.* BENJAMIN M. RICKER.

May Term, 1898.

Present: ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON and START, JJ.

Opinion filed October 3, 1898.

*Keeper of a Dog, Who Is.*—One who permits a dog to be housed, harbored and fed upon his premises and to become, as far as domestic animals may, a member of his family, is to be regarded as its keeper and liable for injuries inflicted by it, if he have notice of its vicious propensity.

*Evidence of Viciousness.*—That the dog was vicious might be shown by evidence of its acts that were unknown to the defendant, the defendant being shown to have had notice of its vicious character.

*Exception.*—An improper answer to a proper question is not ground for reversal.

*Evidence—Exclamations in Sleep.*—The plaintiff, a boy, claimed to have been attacked and bitten by the defendant's dog. As bearing upon his condition, in case the jury should find his story to be true, the trial court permitted the plaintiff father to testify that the first two or three nights after the boy was bitten he would drowse and then start up exclaiming, "Take him off, he is biting me!" *Held,* error.

ACTION ON THE CASE. Plea, the general issue. Trial by jury at the December term, 1897, Caledonia county, *Thompson,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The plaintiff, a young boy, claimed to have been attacked and bitten by the defendant's dog, as the plaintiff, with other children, was passing the defendant's house. The defendant testified that he was present on the occasion in question and that the boy was not bitten, but that he fell down in the road and hurt himself upon a stone; that the dog was present but did not stir from his place.

The witness Perkins testified to being at work as a plumber on the defendant's premises, on some day before the accident, when the dog was tied in the barn floor. The

defendant was not at home. The witness was then asked why the dog was tied, and began to answer, "He was tied, as I supposed," when he was interrupted by the court and instructed to tell only what he knew. The witness then completed his answer as follows: "to prevent our being bitten by him."

*Bates, May & Simonds* for the defendant.

*Smith & Sloane* for the plaintiff.

START, J. The action is case for the recovery of damages resulting from the bite of an alleged vicious dog. The plaintiff's evidence tended to show that the dog was given to the defendant's minor son; that he was kept at the defendant's house nearly all the summer and fall before he bit the plaintiff; that he had been seen to follow the defendant's team; that both the son and the dog made the defendant's house their home; that the dog had bitten one boy before at the defendant's house, of which the defendant was informed; and that the defendant stated that he would not have the dog killed. The court instructed the jury that if the defendant was the head of the family and suffered or permitted the dog in question to be kept on the premises, in the way such domestic animals are usually kept, as a member of the family, so to speak, in so far as a house dog can be termed a member of one's family, then, within the meaning of the law, he was the keeper of the dog, and the same duty was imposed upon him as such keeper to restrain him, if he was aware of his propensity to bite persons, that would have been imposed upon him had he been the actual owner. The court also told the jury that if the son was stopping at the defendant's and the defendant permitted him to have the dog there, and permitted the dog to make that place his home and to be, as much as a dog can, a member of his, the defendant's, family, then the dog would not be there casually in the sense indicated; and the duty explained would arise and rest upon the defendant to see

that while he was thus there he was properly restrained, if he knew that he was accustomed to do that which in law amounts to being accustomed to bite persons. The defendant excepted to what the court said would in law constitute a keeper of the dog, and to what the court said about the keeping of the dog at the defendant's place by the son.

In these instructions there was no error. If the defendant housed, harbored and fed the dog in the way such animals are usually kept by owners, and permitted him to be a member of his family, in so far as such domestic animals can be members of families, he may well be regarded as the keeper of the dog. In *Barrett* .v. *Malden & Melrose Railroad Co.*, 3 Allen 101, under a statute rendering the keeper as well as the owner of .a dog liable to any person injured by him, it was held that the fact that the dog was kept on the defendant's premises by a person in its employment, who had the charge and superintendence of its stable, with the knowledge and implied assent of its general manager or superintendent, was sufficient to warrant the jury in finding that the dog was kept by the defendant. In *Cummings* v. *Riley*, 52 N. H. 368, it is held that if the head of a family, having the possession and control of a house or premises, suffers or permits a dog to be kept on the premises, in the way such domestic animals are usually kept, such head of the family may be regarded as the keeper of the dog. In *Harris* v. *Fisher*, 115 North Carolina 318: 44 Am. St. 452, it is held that the owner of premises, who, having knowledge of the vicious. and dangerous character of a dog owned by his agent, permits such a dog to run at large, is liable for any damage done by the dog to a passer-by.

It was incumbent upon the plaintiff to show that the dog was vicious, and for this purpose the testimony of Homer Varnum, a former owner of the dog, was properly received, notwithstanding the vicious acts testified to did not come

to the defendant's knowledge. It was sufficient to show by other evidence that the defendant knew that the dog was vicious. *Corliss* v. *Smith*, 53 Vt. 532.

There was no error in allowing the witness, Norman Perkins, to state how the dog was kept on the defendant's premises while he was there, nor in allowing the plaintiff to ask the witness why the dog was tied. The question was proper, and error cannot be predicated upon an improper answer. *Cutler and Martin* v. *Skeels*, 69 Vt. 154.

The plaintiff's father being asked to describe in a general way how the plaintiff appeared from the time he was bitten down to the time the sore healed, stated that he was very nervous the first two or three days, that nights especially, the moment he would drop into a drowse, he would jump up and call, "Take him off," the dog was biting him. The court, in holding that this testimony was admissible, said, "If the boy's story is found to be true, it tends to show that the dog made a visible attack upon him, and that has a bearing upon the question of how it may have affected his nerves, impressed itself upon him. We think that, if it should be found that it so impressed him that when asleep the impression followed him, made him nervous and caused him to cry out, it is evidence indicating the condition of the boy. It is not evidence tending to show the dog ever bit him." To this ruling the defendant excepted.

Under this ruling the jury were at liberty to consider the words spoken by the plaintiff while in sleep, upon the question of how the attack of the dog impressed itself upon him and affected his nerves. Words spoken while in sleep are not evidence of a fact or condition of mind; they proceed from an unconscious and irresponsible condition; they have little or no meaning; they are as likely to refer to unreal facts or conditions as to things real; they are wholly unreliable, and a jury ought not to be allowed to guess that such expressions are produced by a present mental or physical condition. The expressions of a person respecting

a past mental or bodily condition cannot be shown by a non-professional witness. The testimony of such a witness is confined strictly to such complaints, expressions and exclamations as furnish evidence of a present existing pain or malady. *State* v. *Fournier and Cox*, 68 Vt. 262; *Knox* v. *Wheelock*, 54 Vt. 150. The expressions of a person in sleep may be induced without cause and by past as well as present conditions. In dreams things long forgotten return, and we live over a past that has no relation to present conditions, and exclamations then made are as likely to be induced by a past as by a present condition. If what the plaintiff said while in sleep can be given any meaning, it was narration of a past event and did not indicate his present mental or physical condition, and the testimony was hearsay and inadmissible. *State* v. *Fournier and Cox*, *supra.* In *People* v. *Robinson*, 19 Cal. 40, it is held that words spoken in sleep are not admissible in evidence.

*Reversed and remanded.*