STATE of Minnesota, Respondent,

v.

Raymond O. POSTEN, Appellant.

No. 50328.

Supreme Court of Minnesota.

Jan. 30, 1981.

C. Paul Jones, Public Defender, and Marguerite M. McCarron, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Appellate Section, David W. Larson and Michael H. McGlennen, Asst. County Attys., and Thomas A. Weist, Minneapolis, for respondent.

SCOTT, Justice.

Defendant was found guilty by a district court jury of a charge of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(a) (1978) (sexual penetration of complainant under 13 years of age by actor who is more than 36 months older), and was sentenced by the trial court to a maximum prison term of 20 years. The two key issues raised by defendant on this appeal from judgment of conviction relate to evidentiary rulings by the trial court, one admitting testimony concerning a statement made by the complainant while she was having a bad dream, the other excluding evidence offered by defendant concerning his character with respect to children. Affirming, we hold that the first of these rulings was within the trial court's discretion and that the second, while erroneous, was not prejudicially erroneous.

Complainant was a 6-year-old girl who, with her younger sister, was living with her mother and defendant, her mother's 36-year-old male friend. While the mother worked, defendant stayed home and was supposed to take care of the children.

On December 24, 1978, complainant's "father," who was separated from but still legally married to complainant's mother, picked up complainant and her sister and brought them to his house for Christmas. This man was not complainant's biological father but he had met and married complainant's mother while she was pregnant with complainant and he considered complainant his daughter and she considered him her father. After complainant had a bath, given her by her father's sister, complainant went to her father and, without him asking any leading questions, told him about a discharge from her vagina and about defendant's having put "his thing in between her legs and stuff."

Complainant's father took her to the emergency room of the Children's Health Center, where complainant repeated her statement about the sexual penetration and told about a number of other acts of physical abuse of her by defendant, including his hitting her on her left thigh with a belt the night before and his having thrown beer bottles at her, having burned her with cigarettes, having blown smoke from "funny" cigarettes into her face, and having given her lots of pills to take.

The staff nurse noticed a discharge on complainant's underwear, observed that her vulva was red and swollen, saw a red mark on her left thigh which was consistent with her having been hit there the night before with a belt, and saw a mark on the thigh which might have been a birth mark or might have been an old cigarette burn.

The pediatrician who was assigned to complainant's case described her as "very bright" but also as being "unusually fearful" of being examined. He observed a red, sore enlarged vaginal opening and the sticky discharge. He generally diagnosed the problem as being "vulvovaginitis," which is just a name describing the inflamed condition but not the cause of the inflammation. He tried to determine the specific cause of the inflammation, but complainant was "so anxious not to have anyone touch her" that it was "impossible" to obtain a specimen. He testified that he was "entirely convinced that some object penetrated her vagina" and that in his opinion "she could not have done this herself with her own hand."

After complainant gave a statement to the police, she and her sister were placed in a foster home. Complainant asked to sleep with her foster mother at first and had frequent nightmares. She would be fighting and scratching and would say, "Ray, stop. Stop it, Ray. Stop it. Stop it." Then when her foster mother woke her she would say, "I thought Ray was after me."

Defendant and complainant's mother were both arrested on January 6, 1979, and charged with criminal sexual conduct in the first degree. Complainant's mother pleaded guilty to criminal sexual conduct in the third degree and was placed on probation. Complainant's mother was apparently supposed to testify against defendant at his trial as part of her plea agreement but, for reasons which are unclear, she never was called.

Defendant's case came on for trial on March 15, 1979. The defense sought to have complainant barred from testifying on the ground that she was incompetent, but the trial court, after questioning her in chambers in the presence of counsel, ruled that she was competent. The court, relying on what it called the "catch-all" exception to the hearsay rule because it believed the sleep-talk was inherently reliable, denied a pretrial motion to suppress that testimony. The court also ordered that witnesses need not be sequestered while complainant testified but that after that they would be sequestered.

Complainant's trial testimony was consistent with her earlier statements. In addition to complainant's testimony the jury had the benefit of the testimony of complainant's father, the staff nurse, the pediatrician, the police, and the foster mother, testimony which we have summarized.

Defendant admitted on direct examination that he had two prior felony convictions, one for burglary and one for forgery, but denied his guilt. Defendant was the only defense witness. The defense sought to call a number of defendant's friends for the purpose of testifying concerning defendant's behavior with children and that they would not hesitate to leave their children in defendant's care, but the court ruled that the defendant's character with respect to other children was not in issue and that therefore the evidence was not admissible.

■ 1. Defendant raises several issues which do not merit detailed discussion. His first contention, that the evidence of his guilt was legally insufficient, is meritless. Complainant was, for a 6-year-old, an effective witness and her testimony implicating defendant was supported by her consistent statements to others concerning what defendant had done to her, the fact that it is highly unlikely that a 6-year-old would have the capacity to concoct a story like this, testimony concerning her inflamed vaginal opening and the discharge, the testimony concerning her highly unusual reluctance at having her vaginal area examined, and the testimony concerning her nightmarish fear of defendant.

■ 2. Similarly, there is no merit to defendant's contention that the trial court erred in refusing sequestration of witnesses while complainant testified. In Minnesota sequestration is not a matter of right but a matter left to the trial court's discretion. Rule 26.03, subd. 7, Minn.R.Crim.P.; *State v. Elli*, 267 Minn. 185, 125 N.W.2d 738 (1964). However, while discretionary, in practice sequestration is rarely denied in criminal cases and rarely should be denied. *State v. Garden*, 267 Minn. 97, 125 N.W.2d 591 (1963). Here the prosecutor and the trial court were justifiably concerned that complainant, who was only 6 years old, might not be able to testify without having her father and her foster mother present, especially since the man she was so afraid of, defendant, also was going to be present. We hold that the trial court did not abuse its discretion.

■ 3. Also lacking in merit is defendant's contention that the trial court committed prejudicial error in admitting some hospital records which defense counsel claimed he had not had an adequate opportunity to see before trial. Since no witness ever testified concerning the content of these ex-

hibits and the exhibits apparently were not delivered to the jury or seen by the jury, the error, if any, could not have been prejudicial.

4. A more difficult issue, one of the two key issues raised on appeal, is the propriety of the trial court's admitting the testimony of complainant's sleep talk.

The prosecutor, in a pretrial memorandum, argued to the trial court that the evidence in question was admissible hearsay under R. 803(2), Minn.R.Evid., as an "excited utterance" or, alternatively, was admissible nonhearsay under the line of cases—*see State v. Arndt*, 285 N.W.2d 478 (Minn.1979) —holding that an out-of-court statement is not hearsay if the declarant is available for cross-examination and if the statement is offered nonsubstantively to corroborate the declarant's trial testimony. The trial court admitted the evidence "under the catch-all area of inherently reliable hearsay," presumably referring to R. 803(24) and R. 804(b)(5), Minn.R.Evid.

There are a number of older cases dealing with unconscious admissions and the cases hold that the admissions are not admissible. *See for example Aide v. Taylor*, 214 Minn. 212, 7 N.W.2d 757 (1943). The theory of these cases is that a statement should be admissible as an admission only if it is a product of the declarant's free will. *Plummer v. Ricker*, 71 Vt. 114, 41 A. 1045 (1898), not an admissions case, held that a witness for a dog-bite plaintiff could not testify for the plaintiff that he overheard plaintiff in his sleep exclaim that "the dog was biting him" and "take him off." The theory of that court was that words spoken in sleep have little or no meaning and are unreliable and may be induced without cause by things having no relation to present conditions.

Rule 803(2), Minn.R.Evid., relied upon by the state in its pretrial memorandum, states that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule "even though the declarant is available as a witness." In this case the statements made by complainant in her sleep relate to the acts which formed the basis of the charge against defendant and arguably they were made while complainant was under the stress of excitement—that is, a nightmare—caused by the prior acts. However, it is questionable whether the drafters of the rule intended hearsay of this nature to be admissible under this exception.

Rather than rely on R. 803(2), we rely on R. 804(b)(5). But for the requirement of unavailability, R. 803(24) and R. 804(b)(5) are identical. In addition to pretrial notice to the adverse party, the key requirements for admissibility under both exceptions are that:

(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Since complainant was technically unavailable with respect to this evidence—because she had no memory of what she said in her sleep—it would seem that R. 804(b)(5) is the more appropriate rule on which to rely.

■ The real issue is whether this evidence was sufficiently trustworthy. We believe that each case has to be considered on its own. It may be that generally evidence of this sort would be untrustworthy. Here, however, we are not dealing with a conniving person who was out to get someone by faking a bad dream, but with a child who obviously had suffered. The length of time between the last of the defendant's acts and the first of the sleep statements was only a few days. Finally, and we think importantly, the trial court knew that this was not the only evidence against defendant and that the evidence likely was going to be used primarily for corroborative purposes. If this were the only evidence connecting defendant to the crime, we would say that it was insufficient to support a conviction. But it was just one of a number of items of

evidence offered in support of complainant's testimony. Under all these circumstances, the error, if any, was harmless.

■ 5. The other difficult issue raised by defendant on appeal is whether the trial court prejudicially erred in excluding the offered evidence concerning defendant's good character with respect to the care of children.

The trial court apparently was under the erroneous impression that since defendant's character with respect to children in general was not an element of the charge against him, the character evidence was not relevant. However, R. 404(a)(1), Minn.R.Evid., explicitly provides that a defendant in a criminal case may introduce "evidence of a pertinent trait of his character" for the "purpose of proving that he acted in conformity therewith on a particular occasion." The rule further provides that when the defendant does this, the prosecutor may "rebut the same." The factor the trial court spoke of—whether the character trait is an element of the charge—has relevance only in determining what kind of evidence may be used by a defendant to prove his good character or trait of character. Rule 405, Minn.R.Evid., provides:

(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) Specific instances of conduct. In cases in which character or trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Here, the trial court was not obliged to admit evidence of specific instances of good conduct by defendant, but should have permitted reputation or opinion evidence by the witnesses.

As stated by the Advisory Committee to the drafters of the corresponding R. 404(a)(1) of the Fed.R. of Evid., this exception to the general rule excluding character evidence is "so deeply imbedded in our jurisprudence as to assume almost constitutional proportions." In *State v. Demmings*, 310 Minn. 152, 246 N.W.2d 31 (1976), we demonstrated our belief in the importance of character evidence—and quoted the Advisory Committee's statement—when we granted a new trial because the trial court improperly limited the jury's use of character evidence to the issue of defendant's credibility. *See also Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed.2d 168 (1948) (such testimony alone may be enough to raise a reasonable doubt of the defendant's guilt).

While we reversed in *Demmings*, the issue was whether a woman had interfered with the police and there were eyewitnesses who corroborated the defendant's denial that she had interfered with the police. In other words, it was a classic "close" case. Thus, in reversing, we stated, "While there may be cases where the evidence of defendant's guilt is so strong that errors of this kind would not require a reversal, this is not such a case." 310 Minn. at 156, 246 N.W.2d at 34.

While we believe in the liberal admissibility of character evidence offered by an accused, we conclude that a reversal in this case is not required because our examination of the record satisfies us beyond a reasonable doubt that this jury would not have acquitted defendant even if they had had the benefit of defendant's character evidence.

Affirmed.

WAHL, Justice (concurring specially).

I concur with the affirmance of the defendant's conviction, but I cannot agree that complainant's sleep talk is admissible, as an exception to the hearsay rule or otherwise. As the state argues, it is not hearsay. Sleep talk falls within neither the language nor the spirit of conduct contemplated as a "statement" by Minn.R.Evid. 801(a). A "statement" is there defined as "(1) an oral or written assertion or (2) non-

verbal conduct of a person, if it is intended by him as an assertion."

The evidence here was not an assertion. The complainant asserted nothing. She merely called out defendant's name and pleaded that he "stop it." She was clearly involved in the role of a participant in a dream-world fantasy. Even if the dreamer had uttered sleep talk in the form of an assertion about the incident, rather than in the form of an enactment of an incident, such sleep talk could never constitute an assertion in the waking-world sense.

Our knowledge about dreaming indicates that, while dreams are to some degree connected to waking-hours desires and anxieties, there is no indication that dream sequences accurately mirror actual events. Therefore, sleep talk contains no probative value regarding actual events or the identities of actual participants. Since sleep talk makes the existence of a fact neither more probable nor less probable, it is relevant, as defined by Minn.R.Evid. 401.

Assuming arguendo that such evidence were relevant at all, its inherent unreliability would lead to its exclusion because its probative value is more than substantially outweighed by the dangers of prejudice. Minn.R.Evid. 403. The same concern about the unreliability of the evidence, which led this court to rule inadmissible statements made in a pre-trial hypnotic interview, should be controlling in this case. *See e. g., State v. Mack*, 292 N.W.2d 764 (Minn.1980).

Few cases have raised the precise question now before us.[1] The basis for holding such evidence inadmissible is set out in *Plummer v. Ricker*, 71 Vt. 114, 41 A. 1045 (1898). In *Plummer*, a civil action for injury from a dog bite, testimony from the father of the plaintiff that the boy had cried out "Take him off" during his sleep was ruled inadmissible. The court there said: "Words spoken while in sleep are not evidence of a fact or condition of mind.

They proceed from an unconscious and irresponsible condition; they have little or no meaning; they are as likely to refer to unreal facts or conditions as to things real; they are wholly unreliable * * *." *Id.* at 117, 41 A. at 1046.

I would hold evidence of sleep talk inadmissible as proof of the crime charged or as corroboration of a witness' testimony. I would not change the trial court's verdict, however, since the defendant could have been convicted without this evidence. The error was, in my judgment, harmless.

SIMONETT, Justice (concurring specially).

I join in the special concurrence of Justice WAHL.

---

1. *People v. Robinson*, 19 Cal. 40 (1861), apparently the first American case on this subject, held such testimony to be inadmissible. Another state has recently addressed a case factually close to the instant case. *State v. Steltzer*, 288 N.W.2d 557 (Iowa 1980). However, the court held that the alleged error in admitting the testimony was not preserved, and thus did not reach the question of the admissibility of the testimony itself. *Id.* at 558.