[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT CLAIRE AGEE'S MOTION FORSUMMARY JUDGMENT
In this case the plaintiff has sued the defendant Claire Agee and her son under Section 22-357 of the General Statutes. The plaintiff claims to have been walking his dog when an overly friendly or certainly excitable golden retriever ran from the defendant's property towards him and his dog. The plaintiff alleges that the actions of the golden retriever caused him to fall and suffer injury.
The defendant Claire Agee has filed a motion for summary judgment claiming the statute doesn't apply to her. The statute in relevant part reads as follows: CT Page 10354
 "Sec. 22-357. If any dog does any damage to either the body or property of any person, the owner or keeper . . . . shall be liable for such damage . . ."
In support of her motion, the defendant submitted two affidavits which set forth the following facts: On November 22, 1990, when the incident occurred, her son was visiting her for Thanksgiving dinner. Her son resided in New Hampshire with his family. The son brought his dog, a golden retriever, to the defendant's home. The incident giving rise to this suit occurred shortly after her son and his family arrived to visit. The second affidavit of the defendant Claire Agee says her son and his three children take care of the dog, the dog was not hers and she did not care for the dog and since it was not hers did not control the dog. She goes on to say in her affidavit that she was not responsible for the feeding, discipline or health and welfare of the dog. Also she says prior to November 22 she didn't provide care for or have any control over the dog. Mrs. Agee concludes by saying while her son, his family and the golden retriever visit her house, her son and his family are responsible for the custody, control, feeding, discipline, health or welfare of this dog.
The plaintiff has provided no affidavits but argues summary judgment is not appropriate here. Summary judgment should not be granted if there is a material issue of fact and the question of whether there is a one must be considered in a light that is most favorable to the non-moving party. On the basis of several cases he cites the plaintiff claims there are genuine issues of material fact. Interestingly the plaintiff cites Bethea v Gary et al 8 CSCR 511 (1993) for the proposition that whether anyone, including a landlord, is a keeper of a tenant's dog under § 22-357 is a material question of fact but that court goes on to grant the defendant's motion for summary judgment because based on the defendant's affidavits there was no genuine issue of fact with respect to his claim that he was not the owner or keeper of the dog.
The defendant Claire Agee can be liable only if she is an "owner or keeper". There is no issue of material fact as to whether she was the owner of this dog. The affidavits submitted by Mrs. Agee make it clear that she was not the "owner". No counter affidavits were submitted and the tenor of the objection to the motion is such that the plaintiff CT Page 10355 appears to concede this point.
Claire Agee's liability under the statute depends on whether she can be characterized as a "keeper". The term "keeper" of a dog has been defined most recently in two cases. In Falby v Zarembski221 Conn. 14, 19 (1992) the court said:
 "A keeper is defined as `any person, other than the owner, harboring or having, in his possession any dog . . . To harbor a dog is to afford lodging, shelter, or refuge to it `Possession cannot be fairly construed as anything short of the exercise of dominion and control (over the dog)
In Falby the court reversed a judgment for the plaintiff where the facts showed that the defendant company knew that the dog owner "was in the habit of bringing the pit bull terrier with him to various work sites, that it acquiesced in the presence of the dog at these sites and that it could have prohibited (the dog owner) from bringing the dog with him to work if it so desired", id. p. 19. The court reasoned that on these facts there could be no liability under § 22-357 since there was no evidence the defendant company:
 . . . fed, watered, housed or otherwise cared for the dog. There was no evidence that it exercised any form of control over the actions of the dog. Contrary to the plaintiff's claim, control over the premises where the dog inflicted the injuries or over (the dog owner), by virtue of the employment relationship did not convert the (defendant company into a keeper of . . (the) dog while it was present at the work site, id. pp. 19-20
 Falby said the Appellate Court adopted a similar view to its own (see ftn 3 at 221 Conn. p. 20) in Buturla v St. Onge9 Conn. App. 495 (1987). In Buturla the court held the mere acquiescence by the landlord of the dog's presence in the leased premises would not establish the landlord's liability under the statute absent any evidence of caretaking of the dog or actual control over the dog. The court upheld the trial CT Page 10356 court's granting of a motion for summary judgment in the landlord's favor. In Buturla the court referred to the statutory language of Section 22-357 (6) which defines "keeper" for the purposes of Chapter 435 within which Section 22-357 is contained. Keeper is defined as follows:
 . . Any other person other than the owner, harboring or having in his possession any dog.
The Buturla court first noted the Webster definition which defined "harbor" to mean "afford lodging, to shelter, to give refuge to" then adopted a somewhat narrower definition from Corpus Juris Words and Phrases. The court referred to the earlier case of Hancock v Finch 126 Conn. 121 (1939). TheButurla court then went on to say:
 In Hancock v Finch, supra 123, the court stated that `possession cannot be fairly construed as anything short . . . of dominion and control'. . . . We find, as did the trial court, that in order to harbor or possess a dog, some degree of control over the dog must be exercised. The two cases cited by the trial court followed the same analysis. In Bailey v DeSanti 36 Conn. Sup. 156 . . . (1980) the court found the defendant landlord had harbored the dog involved because the dog was kept in an area of the yard under the direct control of the landlord. Similarly in Larsen v McDonald, 5 Conn. sup. 150 (1937), the court used a `control of the dog' standard to find that the defendant employer was keeper of his employee's dog", id. p. 498
It could be said that under Bailey since the dog was on premises owned by Mrs. Agee and the attack occurred on those premises she is liable just as the landlord in Bailey who permitted his tenant son to keep the dog in a yard under his (the landlord's) control. Such an analysis would seem to conflict with the very "control of the dog" standard set forth in Buturla and certainly with the control standard required inFalby. There, as noted, the defendant building contractor had CT Page 10357 control of the job site and could have prevented the dog owner from bringing the dog to the job site. Still the court found no liability under the statute.
The way to reconcile these authorities seems to lie in a reading of a case cited in Buturla, Larsen v McDonald supra. There the defendant owner of business premises allowed the dog to stay on his premises and to be sheltered and cared for by his employees. The court held . . . "this made (the defendant) the keeper of the dog in view of the length of time (Viz. since June 1933) that the dog was there under the circumstances referred to before it attacked plaintiff on July 13, 1933." 5 Conn. Sup. at page 152. If one examines the language of a case cited by the plaintiff Abraham v Ibsen
213 Ill. App. ? 210 (1919) and the authorities referred to byAbraham that case merely holds that if you allow a dog to stay on your premises and to be cared for by a family member you could be liable if the dog attacks someone where the dog owner had been permitted to stay on the premises for a period of time, as if he or she was part of the family, see Cummings vRiley 52 N.H. 368 and Plummer v Ricker 71 VT 114 as cited inAbraham v Ibsen supra. In Abraham itself the son brought the dog to his father's home from college the day before but college was in Michigan and home in Chicago so it is difficult to tell if this incident occurred during a short visit or the son was home for a longer period — summer vacation or holiday break.
In any event in light of Buturla especially as modified by Falby since there is a complete absence of control over the dog by Mrs. Agee and the dog owner son by uncontroverted affidavits was visiting his mother's house simply for dinner on the very day the attack occurred I believe the motion for summary judgment should be granted as a matter of law.
Any other result would make the owner of premises liable for a dog attack under the statute where the dog in question was not owned by him or her and was merely on the premises because it was brought by a visitor who came for the purpose of spending only a portion of the day. Absent any actual control over or caretaking of the dog by the owner of the premises especially under Falby this wouldn't establish liability under the statute since here as in Falby no control was exercised by the defendant and no liability could be found although the defendant could have barred the dog from the CT Page 10358 premises.
The motion for summary judgment is granted.