[No. 25046–9–I. Division One. April 22, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. RONALD
LEWIS CHADDERTON, *Appellant.*

*Dawn Monroe* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

COLEMAN, J.—Ronald Chadderton appeals from the judgment and sentence entered against him for first degree manslaughter, claiming that the court lacked any substantial and compelling reason to impose an exceptional sentence of 72 months. We affirm.

On August 11, 1989, Chadderton pleaded guilty to the charge of first degree manslaughter. In his guilty plea, Chadderton stated:

> In Snohomish County on or about April 14, 1989, through recklessness, I injured Esther Blake by thrusting her into a chair too roughly. As a result of this her hip was broken contributing proximately to her death on May 21, 1989.

Esther Blake was an 87–year–old patient in the nursing home where Chadderton worked as an aide. Because of Chadderton's reckless actions, Blake suffered a broken hip that required surgery. Additional complications arose, including a blood clot, which led to Mrs. Blake's death.

At the sentencing hearing on September 28, 1989, Chadderton's offender score was determined to be "1" with a seriousness level of 9. The State requested the maximum

sentence within the standard sentencing range which was 36 to 48 months. *See* RCW 9.94A.310 (Table 1). However, the court elected to impose an exceptional sentence of 72 months. The judge reasoned:

> In this particular case I cannot accept the State's position or counsel's response that this is a standard range sentence. I'm not willing to give a standard range sentence in this case. I'm going to give an exceptional sentence . . . based on the fact that I have a woman who is 87 years of age, very elderly, very vulnerable in the resting home. She couldn't control how or where she was going to be. She was required to be there because of her age. She was placed in a home and was required to have trust from the employees within the rest home. . . . These elderly people are supposed to be treated with care. They totally trust you. They have no other place to go. I just cannot accept a 48–month sentence. This woman was extremely vulnerable, totally relied on the care of getting in and out of bed from the employees, had complete trust in you for properly treating her. You may have been frustrated, you may have not have had the proper care for assistance from your employees. There was no justification for this under any circumstances. The Court would set a 72–month sentence.

The judge specified two substantial and compelling reasons justifying the exceptional sentence:

> 1. The defendant knew or should have known . . . [that the] victim was particularly vulnerable due to advanced age, disability or ill health. RCW 9.94A.390(2)(b).
> 2. The defendant abused his position of trust and fiduciary responsibility to facilitate the commission of the offense. RCW 9.94A.390(2).

Chadderton challenges both reasons for the exceptional sentence.

■ A reviewing court may reverse an exceptional sentence only if (1) the record does not support the reasons given by the trial court under a "clearly erroneous" standard; (2) those reasons do not justify an exceptional sentence as a matter of law; or (3) the sentence imposed is clearly excessive or too lenient. RCW 9.94A.210(4). *State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

In a given case, a trial court may impose an exceptional sentence if substantial and compelling reasons justify it.

RCW 9.94A.120(2). In determining that an exceptional sentence is warranted, a court "must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense." (Footnote omitted.) *Nordby*, at 518. RCW 9.94A.390 sets forth a list of aggravating and mitigating factors to illustrate situations in which an exceptional sentence would be appropriate. Two of the factors relevant to this case are as follows:

> The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

RCW 9.94A.390(2)(b) and

> The current offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:
>
> . . . .
> (iv) The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense.

RCW 9.94A.390(2)(c)(iv).

We first consider whether the trial court erred by imposing an exceptional sentence on the ground that Chadderton knew or should have known of Mrs. Blake's vulnerability.

Chadderton argues that because the statutory definition of first degree manslaughter[1] includes the element of recklessness,[2] the presumptive sentencing range for the crime already would have accounted for the fact that Chadderton knew of and disregarded the substantial risks involved in his actions toward Blake. Accordingly, he concludes that an

---

[1] The crime is defined as follows:
"A person is guilty of manslaughter in the first degree when:
"(a) He recklessly causes the death of another person[.]" RCW 9A.32.060-(1)(a).

[2] "A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable [person] would exercise in the same situation." RCW 9A.08.010(1)(c).

exceptional sentence could not be based upon his knowledge that Blake was elderly and in ill health.

 Chadderton's argument is unpersuasive. A conviction of first degree manslaughter does not require the victim to be physically vulnerable. *See, e.g., State v. Smith,* 31 Wn. App. 226, 640 P.2d 25 (1982). Consequently, the Legislature did not necessarily take into account victim vulnerability when it set the presumptive range for first degree manslaughter.

Further, Chadderton's reliance upon *State v. Crutchfield,* 53 Wn. App. 916, 771 P.2d 746 (1989), *limited in State v. Stevens,* 58 Wn. App. 478, 794 P.2d 38, *review denied,* 115 Wn.2d 1025 (1990) is misplaced. In *Crutchfield,* one of the defendants was convicted of first degree manslaughter. The trial court imposed an exceptional sentence based in part upon the fact that the defendant was reckless by being too preoccupied with his drug business to prevent the victim's death. On appeal, the court held that such recklessness was already accounted for in determining the presumptive sentence for first degree manslaughter and, therefore, could not be considered again for imposing an exceptional sentence. *Crutchfield,* at 925. The court did not consider victim vulnerability when it determined the recklessness issue.

However, the *Crutchfield* court did consider the trial court's reliance upon the victim's vulnerability as a separate reason for imposing the exceptional sentence. In the context of its discussion of victim vulnerability, the appellate court did not predicate its decision upon the defendant's recklessness. Instead, the court found that the evidence failed to support a finding that the victim actually was vulnerable and, for that reason, concluded that it was error to use victim vulnerability as a basis for imposing a sentence beyond the standard range. *Crutchfield,* at 923–24. In contrast, Mrs. Blake's vulnerable condition is undisputed in the present case.

██ The critical inquiry regarding victim vulnerability focuses on

whether or not the victim was more vulnerable to the offense than other victims due to extreme youth, advanced age, disability, or ill health and whether the defendant knew of that vulnerability. Accordingly, the mens rea element of the crime with which the defendant is charged has no relevance; instead, what is critical is whether the defendant knew or should have known of the victim's vulnerability, and whether the particular vulnerability was a substantial factor in accomplishment of the crime.

(Citation omitted.) *State v. Jones*, 59 Wn. App. 744, 753, 801 P.2d 263 (1990).

In this case, Chadderton knew of Mrs. Blake's advanced age and condition. Nevertheless, he acted recklessly by thrusting her into a chair without concern for her fragile state. Consequently, the trial court properly considered the aggravating factor of victim vulnerability as set forth in RCW 9.94A.390(2)(b) in imposing the exceptional sentence.

The second issue that Chadderton raises is whether the trial court erred by imposing an exceptional sentence on the ground that Chadderton abused his position of trust and fiduciary responsibility to facilitate the commission of the offense based upon RCW 9.94A.390(2)(c)(iv).

Chadderton, relying again upon *Crutchfield*, argues that the trial judge erred by imposing an exceptional sentence on the ground of abuse of trust. He asserts that because he never intended to harm Mrs. Blake, he could not have abused his caretaker role to "facilitate" the crime of manslaughter.

Courts are not limited to the illustrative factors set forth in the sentencing reform act in determining whether an aggravating circumstance warrants an exceptional sentence. RCW 9.94A.390. For example, although the aggravating factor of abuse of trust as set forth in RCW 9.94A-.390(2)(c)(iv) originally applied only to offenses of an economic nature, it has since been expanded judicially to cases involving noneconomic offenses. *See Stevens*, at 499.

 Moreover, *Stevens* expressly limited *Crutchfield* and rejected an argument comparable to the one Chadderton asserts. *See Stevens,* at 499. In *Stevens,* the defendant was convicted of two counts of statutory rape. The trial court imposed an exceptional sentence in part upon the ground of abuse of trust because the defendant used his position as a baby–sitter to facilitate his voluntary acts of child molestation. *Stevens,* at 483, 500–01. The appellate court affirmed the exceptional sentence and rejected Stevens' reliance upon *Crutchfield,* stating:

> The emphasis in *Crutchfield* on a crime of intent was unnecessary to the holding. The applicability of abuse of trust as an aggravating factor turns on the language of RCW 9.94A-.390(2)(c)(iv). The proper inquiry is whether the defendant used his position to facilitate the commission of the crime, not whether the State has to prove a specific intent to commit the crime. While mens rea should be a guiding factor in analyzing whether abuse of trust exists in a particular case, it should not be dispositive. To the extent *Crutchfield* is inconsistent with this principle, it is limited to its facts.

*Stevens,* at 501.

 Because of the unique nature of a caretaker relationship and the vulnerability and dependence of those being cared for, we hold that when a caretaker commits a crime against someone in his or her care, such conduct may constitute an abuse of trust notwithstanding the absence of a specific intent to injure. Caretakers have a duty to avoid harming the people who rely upon them to meet their needs and who entrust them with their safety. When caretakers breach that trust, the gravity of the resulting injury and the caretaker's culpability is intensified so as to warrant a sentence outside the presumptive range.

In the present case, Chadderton occupied such a position of trust. He was responsible for the care and well–being of the elderly nursing home residents who, like Blake, were physically vulnerable and dependent. Chadderton's position of caretaker obligated him to refrain from reckless behavior which would necessarily endanger those in his charge. When Chadderton recklessly injured Blake, he brought

about her death, and such an abuse of his caretaker role warranted an exceptional sentence.

The judgment and sentence of the trial court are affirmed.

WEBSTER, A.C.J., and AGID, J., concur.

Review granted at 117 Wn.2d 1001 (1991).