# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47841-2-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| JORGE ALVAREZ-GUTIERREZ, | |
| Appellant. | |

SUTTON, J. — Jorge Alvarez-Gutierrez appeals his jury trial convictions for first degree rape of a child and first degree child molestation. He argues that the trial court improperly admitted an expert's testimony about delayed disclosure in child abuse cases. He also requests that this court exercise its discretion and waive appellate costs. We hold that the trial court did not err in allowing the testimony about delayed disclosure, and we affirm Alvarez-Gutierrez's convictions. We also decline to award costs on appeal.

## FACTS

### I. BACKGROUND FACTS

On February 13, 2014, Alvarez-Gutierrez's 11-year-old daughter E.A. disclosed to a friend's mother, Janine Taylor, that Alvarez-Gutierrez had been engaging in inappropriate sexual behavior with her (E.A.) for some time. Taylor contacted the police the next day.

An emergency room doctor examined E.A. and the resulting exam was "normal." 6 Report of Proceedings (RP) (May 28, 2015) at 28. Later, the doctor testified that the exam was not

necessarily consistent or inconsistent with penetration. E.A. was also interviewed by Keri Arnold, a child forensic interviewer with the prosecutor's office, who testified for the State.

## II. PROCEDURAL FACTS

The State charged Alvarez-Gutierrez with three counts of first degree rape of a child and one count of first degree child molestation.

### A. MOTION IN LIMINE

The State moved in limine to allow Arnold "to testify, based on training and experience, regarding delayed disclosure of sexual abuse by children and related issues, subject to the proper foundation being established, pursuant to ER 702." Clerk's Papers (CP) at 33. In its written motion, the State argued that under Washington case law, such testimony was admissible when "based on a professional's training, experience and personal observations of a specific group and when it 'does not concern novel theories of sophisticated or technical matters,'" and that this evidence "'need not meet the stringent requirements for general scientific acceptance,' also known as the *Frye*[1] standard." CP at 33-34 (quoting *State v. Jones*, 71 Wn. App. 798, 815-16, 863 P.2d 85 (1993); *State v. Graham*, 59 Wn. App. 418, 421-22, 798 P.2d 314 (1990); *State v. Stevens*, 58 Wn. App. 478, 794 P.2d 38 (1990). At the hearing on the motion, the State argued that it wanted Arnold to testify "regarding the frequency of delayed disclosure in sex abuse cases" and that it wanted the evidence "limited to that specific topic just so the jury is aware that delayed disclosure is not an uncommon phenomenon." 1 RP (May 18, 2015) at 33.

Defense counsel argued that if Arnold testified that, based on her experience, delayed reporting was common, "that tends to portray to the jury that this is accepted in the scientific

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

community because she's being held out as an expert." 1 RP (May 18, 2015) at 33-34. Defense counsel expressed concern that Arnold's testimony could be viewed as a "scientific principle when there's really no proof that it is." 1 RP (May 18, 2015) at 34.

Although neither party presented any testimony or documentation about whether delayed disclosure was a commonly accepted scientific theory, the trial court responded that delayed disclosure was "a phenomenon that is well documented in psychological literature" and that the court understood it to be "commonly accepted" that delayed disclosure did not imply the victim was making up his or her accusations. 1 RP (May 18, 2015) at 34-35. Ultimately, the trial court ruled,

> So I'm going to allow the testimony related to delayed disclosure, understanding that I'm kind of confining it to the offer of proof that you made, [prosecutor], limiting it to: "In your experience, is this common or uncommon? Have you heard it before?" some limited bit of questioning like that.

1 RP (May 18, 2015) at 35.

B. TRIAL TESTIMONY

At trial, the State's witnesses testified as described above.[2] In addition, E.A. testified that Alvarez-Gutierrez had started having inappropriate sexual contact with her when she was six or seven years old. She stated that Alvarez-Gutierrez would watch pornographic movies and masturbate, and that he would sometimes ask her to watch the movies with him. He also had her touch his penis and would make her "play with" him if she asked for money from him. 5 RP (May 27, 2015) at 40, 47.

---

[2] Alvarez-Gutierrez did not present any evidence.

E.A. further testified that Alvarez-Gutierrez started to touch her inappropriately when she was approximately 10 years old. She also described one incident where sexual intercourse occurred.

E.A. admitted that she had not told her mother about the inappropriate behavior, but she asserted that she did not say anything because (1) she was afraid her mother might do something to harm her father, and (2) she thought her father would "go away," she would end up being upset and angry, and she would miss school. 5 RP (May 27, 2015) at 98. E.A. also admitted that she was jealous of the time Alvarez-Gutierrez spent with her brother and that her father was less likely to let her spend time with her friends.

Arnold, the child forensic interviewer, did not testify about any specific statements that E.A. made during her interview. Instead, Arnold testified about her training and experience and the interview process and protocols that she used in investigations. During this testimony, Arnold disclosed that she had conducted investigatory interviews with over 2,000 children, some of whom disclosed abuse.

The State then questioned Arnold about delayed disclosure:

| Q. [Prosecutor]: | You mentioned that as a forensic interviewer you keep track of topics that are relevant to your field? |
|---|---|
| A. [Arnold]: | Yes. |
| Q. [Prosecutor]: | Are you familiar with the term "delayed disclosure"? |
| A. [Arnold]: | Yes. |
| Q. [Prosecutor]: | What does that mean? |
| A. [Arnold] | Delayed disclosure refers to there being a time lapse between when an abusive incident occurs and when a child actually discloses about that abusive incident. |
| Q. [Prosecutor]: | And are you familiar with the literature having to do with this topic? |
| A. [Arnold]: | Yes. |
| Q. [Prosecutor]: | Have you testified about delayed disclosure before? |
| A. [Arnold]: | Yes, I have. |

4

> Q. [Prosecutor]: In your training and experience, is delayed disclosure unusual?
>
> A. [Arnold]: No. It's completely common. In fact, it happens in most cases.

7 RP (June 1, 2016) at 16.

After the State rested, the trial court granted Alvarez-Gutierrez's motion to dismiss two of the rape charges for lack of evidence.

## C. CLOSING ARGUMENT

In closing argument, defense counsel argued that there were no witnesses to corroborate E.A.'s allegations, that the case focused on E.A.'s testimony and credibility, and that there were aspects of E.A.'s testimony that did not make sense or were inconsistent. Defense counsel specifically argued that E.A. had ample opportunity to safely tell her mother or others what had been happening and that her failure to do so "suggests that nothing inappropriate could have been going on." 7 RP (June 1, 2015) at 65-66.

In rebuttal, the prosecutor responded:

> Defense counsel also wants you to believe that because [E.A.] could have told earlier, this didn't happen. We heard from Ms. Arnold this morning that a lot of kids don't tell earlier.

7 RP (June 1, 2015) at 74-75.

## D. CONVICTION AND SENTENCING

The jury found Alvarez-Gutierrez guilty of one count of first degree rape of a child and one count of first degree child molestation.

At sentencing, the trial court considered a presentencing investigation report (PSI) that noted that Alvarez-Gutierrez (1) was born and raised in Mexico and does not speak English, (2)

had essentially no education, (3) had not been employed since 2011 due to health issues,[3] although he had previously worked for several years for a landscaping company, and (4) was being held on an immigration hold for deportation back to Mexico. The PSI also noted that Alvarez-Gutierrez had no assets other than three cars, that he had a $777 monthly mortgage on his home, and that the family had been living entirely on his wife's income from her job at Wal-Mart Stores Inc.

Although the State asked the trial court to impose both mandatory and discretionary legal financial obligations (LFOs), the trial court waived all discretionary LFOs. The trial court noted that Alvarez-Gutierrez's medical conditions made it unlikely he could pay any LFOs. The trial court then sentenced Alvarez-Gutierrez to 160 months of incarceration and lifetime community custody. The trial court found him indigent for purposes of appeal.

Alvarez-Gutierrez appeals.

## ANALYSIS

### I. Delayed Disclosure Testimony

Alvarez-Gutierrez argues that the trial court erred in allowing Arnold's testimony about delayed disclosure. He contends that this testimony was presented as "profile testimony" or "as a basis for generalized statements about the behavior of sexually abused children as a class," rather than just to rebut allegations by Alvarez-Gutierrez that E.A.'s behavior was inconsistent with

---

[3] Leukemia and heart tumors.

abuse, so it had to meet the *Frye* test to be admissible.[4] Br. of Appellant at 9-10. We disagree

with Alvarez-Gutierrez's characterization of the evidence and hold that Arnold's testimony was

properly admitted.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Lormor*,

172 Wn.2d 85, 94, 257 P.3d 624 (2011). A trial court abuses its discretion when it "relies on

unsupported facts, takes a view that no reasonable person would take, applies the wrong legal

standard, or basis its ruling on an erroneous view of the law." *State v. Lord*, 161 Wn.2d 276, 285,

165 P.3d 1251 (2007). We may affirm the trial court on any basis the record supports. *LaMon v.*

*Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

Expert opinions regarding behaviors of abused children as a class must be admissible under

the *Frye* standard. *Jones*, 71 Wn. App. at 818. But *Frye* does not apply when the expert's opinion

is based on the witness's own observations of a specific group.[5] *Jones*, 71 Wn. App. at 818. And

it is well established that expert testimony about delayed disclosure is admissible if it is limited to

an opinion that delayed reporting is not unusual. *State v. Petrich*, 101 Wn.2d 566, 575-76, 683

---

[4] Alvarez-Gutierrez also contends that the prosecutor argued in closing "that E.A. fit the profile Arnold described." Br. of Appellant at 9. We disagree. The prosecutor's argument directly responded to Alvarez-Gutierrez's argument that E.A.'s failure to disclose the abuse implied that E.A. was fabricating the abuse. The prosecutor's argument that Arnold had testified that "a lot of kids don't tell earlier," clearly addressed whether delayed disclosure was unusual and whether the delay affected E.A.'s credibility—this argument did not suggest that the delayed disclosure was proof that the abuse occurred or that E.A. fit the profile of an abused child.

[5] We acknowledge that the trial court apparently permitted this testimony after finding that it met the *Frye* requirements. But we may affirm the trial court on any grounds supported by the record. *LaMon*, 112 Wn.2d at 200-01.

P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

The record does not support Alvarez-Gutierrez's contention that Arnold's testimony went beyond a mere opinion that delayed reporting is not unusual and, instead, amounted to either profile evidence or "generalized statements about the behavior of sexually abused children as a class." Br. of Appellant at 9. Arnold responded to the question of whether, based on her training and experience, delayed disclosure was unusual. And her response was limited to stating that delayed disclosure was common and happens in most cases. Neither the State's question nor Arnold's answer suggested that this was a generalized statement about behaviors exhibited by sexually abused children as a class. Nor did the State's question or Arnold's response suggest that this evidence was based on new scientific principles or novel science rather than Arnold's personal observations. Accordingly, we hold that this evidence was not subject to the *Frye* requirements, and that the trial court did not err in admitting Arnold's testimony on this subject.[6]

## II. WAIVER OF APPELLATE COSTS

Alvarez-Gutierrez asks that we waive appellate costs because he is indigent and unlikely to be able to pay. The record contains considerable information about Alvarez-Gutierrez's health, financial status, work history, and immigration status, which more than suggest that he

---

[6] Alvarez-Gutierrez also argues that Arnold's testimony was "improper opinion testimony that invaded the province of the jury and violated [his] right to a jury trial." Br. of Appellant at 1 (Assignment of Error 1), 10. He does not present a discrete argument on this issue and instead combines it with his argument that Arnold's testimony was inadmissible because it did not meet the *Frye* standards. But even assuming this issue is properly before us, Alvarez-Gutierrez's argument fails. As discussed above, Arnold's testimony addressed only whether delayed reporting was common, Arnold did not testify that delayed reporting was proof of abuse or that that she believed E.A.'s accusations. Thus, it did not amount to opinion testimony.

will not be able to pay any discretionary LFOs. In fact, the trial court found that Alvarez-Gutierrez would likely be unable to pay any LFOs. Accordingly, we grant Alvarez-Gutierrez's request and do not award appellate costs in this matter. *See* RAP 14.2.

We affirm Alvarez-Gutierrez's convictions and decline to award costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, J.

MAXA, A.C.J.