# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50215-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| W.F., | |
| Appellant. | |

MAXA, C.J. – WF appeals his juvenile court adjudication of guilty of first degree child molestation, which arose from an interaction with a six-year-old girl, GKJ, in WF's backyard. GKJ told three people – her mother, a forensic interviewer, and a medical doctor – that WF reached inside her pants and touched her vagina.

We hold that (1) the trial court did not err in ruling that GKJ was competent to testify, (2) the trial court did not err in admitting GKJ's hearsay statements, and (3) the State presented sufficient evidence to prove that WF touched GKJ. Accordingly, we affirm WF's adjudication.

## FACTS

On September 14, 2016, GKJ was walking past WF's house when WF told her that she could use his cell phone if she came into his backyard. GKJ was six years old and WF was 13 years old at the time. In the backyard, WF put his hand down GKJ's pants and touched the skin of her vagina. WF also tried to pull down GKJ's pants multiple times. Shortly thereafter, GKJ

told her mother that WF had touched her "pee-pee spot." Clerk's Papers (CP) at 69. GKJ's mother contacted law enforcement. The State charged WF with first degree child molestation.

GKJ's mother had discussions with GKJ about the incident with WF. GKJ also participated in a videotaped forensic interview with Kim Holland, and a sexual assault medical exam and an audio recorded interview with Dr. Kimberly Copeland. In the discussions with her mother and in both interviews, GKJ disclosed that WF had touched her vagina.

At trial, the trial court acknowledged the need for a hearing on the admissibility of GKJ's hearsay statements under RCW 9A.44.120. The parties agreed to treat the testimony from the child hearsay hearing as trial testimony. All the State's trial testimony was elicited in the RCW 9A.44.120 hearing portion of the trial with the exception of one witness.

Holland testified about what GKJ told her about the incident, and the trial court viewed the digital video disk of the interview. When Holland asked GKJ if she knew why she was talking with her, GKJ stated, "Because somebody did something really inappropriate to me." Report of Proceedings (RP) at 73. GKJ stated to Holland that WF pulled her pants down and touched her on her "potty part." RP at 73. GKJ also told Holland that she had gone into WF's backyard to play on his phone. GKJ stated that WF touched her vagina one time, and then she got up. GKJ told Holland that WF was trying to pull her pants down as she was walking away.

Dr. Copeland testified about what GKJ told her about the incident, and the trial court listened to the compact disk of the interview. Dr. Copeland asked GKJ about how she was treated at home and whether anything inappropriate had happened to her before. GKJ told Dr. Copeland that she was being interviewed because her brother's friend had touched her "potty parts." RP at 115. GKJ told Dr. Copeland that WF touched the skin of her vagina one time with his hand. GKJ stated that WF "pants[ed] me and touched my skin on my potty parts." RP at

2

115. GKJ explained to Dr. Copeland that WF first touched her vagina inside her clothes and then tried to pull down her pants.

GKJ's mother testified about her conversations with GKJ. She stated that GKJ had checked in with her earlier in the evening and gone back out into the neighborhood. GKJ's mother stated that she was leaving to pick up GKJ from the neighbor's house where she assumed GKJ was playing when GKJ came "flying out of [WF's] driveway." RP at 128. She stated that GKJ told her she had been playing a game with WF and he tried to pull her pants down multiple times. GKJ's mother testified that GKJ said WF touched her "pee pee spot" after he pulled down her pants. RP at 132.

GKJ testified and answered questions about her understanding of the difference between the truth and a lie, as well as her interaction with WF. GKJ stated that she knew the difference between the truth and a lie, and she recalled details from her birthday party. GKJ testified that WF told her that if she wanted to play on his phone she had to go in his backyard. GKJ went in the backyard and played with WF's phone. GKJ then stated that WF touched her where she goes pee, under her clothes and on her skin. She also said that WF pulled down her pants.

After hearing this testimony, the trial court considered argument regarding the admissibility of GKJ's hearsay statements. The State focused its argument on the *Ryan*[1] factors for admissibility under RCW 9A.44.120. The State only briefly discussed GKJ's competency to testify, stating, "I think there is no question that [GKJ] is a competent witness." RP at 198. In response, WF argued that certain *Ryan* factors were not present. WF did not argue that GKJ was not competent to testify.

---

[1] *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

The trial court provided a detailed oral ruling that GKJ was competent to testify, analyzing each of the *Allen*[2] factors for competency. The trial court expressly found that GKJ had an understanding of the obligation to speak the truth based on her responses to the prosecutor's questions about what was a lie and what was the truth. The trial court entered specific findings of fact regarding those factors and entered a conclusion of law that GKJ was competent to testify.

The trial court then provided a detailed oral ruling that GKJ's hearsay statements to GKJ's mother, Holland, and Dr. Copeland were admissible under RCW 9A.44.120, analyzing each of the *Ryan* factors. The trial court entered specific findings of fact regarding most of those factors and entered conclusions of law that all of GKJ's hearsay statements were reliable and were admissible.

After the trial court's rulings, WF testified in his defense. He denied touching GKJ inside her clothing or pulling down her pants.

The trial court adjudicated WF guilty of first degree child molestation. WF appeals the trial court's adjudication.

## ANALYSIS

A.  COMPETENCY OF CHILD WITNESS

WF argues that the trial court erred in finding GKJ competent to testify at trial. We disagree with WF.

1.  Standard of Review

Under RCW 5.60.050, all witnesses – including child witnesses – are presumed to be competent to testify unless proved otherwise by a preponderance of the evidence. *State v.*

---

[2] *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

*Brousseau*, 172 Wn.2d 331, 341, 259 P.3d 209 (2011). The party challenging the witness's

competency has the burden of proof. *Id.*

In *State v. Allen*, the Supreme Court outlined the test a trial court must employ when

assessing the competency of a child witness. 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). The

trial court must determine whether the child demonstrates:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Id.*; *see also Brousseau*, 172 Wn.2d at 337.

We review a trial court's ruling on a child's competency to testify for a manifest abuse of

discretion. *Brousseau*, 172 Wn.2d at 340. Because the competency of a minor witness is not

easily reflected in a written record, we "must rely on the trial judge who sees the witness, notices

the witness's manner, and considers his or her capacity and intelligence." *State v. Woods*, 154

Wn.2d 613, 617, 114 P.3d 1176 (2005). "There is probably no area of law where it is more

necessary to place great reliance on the trial court's judgment than in assessing the competency

of a child witness." *Id.* (quoting *State v. Borland*, 57 Wn. App. 7, 11, 786 P.2d 810 (1990),

*overruled on other grounds*, *State v. Rohrich*, 132 Wn.2d 472, 939 P.2d 697 (1997)). We may

examine the entire record in reviewing the trial court's competency determination. *Woods*, 154

Wn.2d at 617.

2. Failure to Challenge in Trial Court

A party must object to the competency of a witness at the first opportunity in the trial

court. *State v. C.M.B.*, 130 Wn. App. 841, 847, 125 P.3d 211 (2005). A witness's competency

to testify cannot be challenged for the first time on appeal. *Id.*

5

Here, WF did not expressly object to GKJ's competency and did not argue that GKJ was not competent to testify. However, despite WF's failure to address the issue, the trial court made express findings of fact and a conclusion of law regarding GKJ's competency. WF assigned error to the trial court's conclusion that GKJ was competent to testify. And the State does not argue that WF should be precluded from challenging GKJ's competency for the first time on appeal. Therefore, we exercise our discretion to consider WF's competency argument.

3.  No Abuse of Discretion

WF argues that the trial court erred in finding that GKJ understood her obligation to tell the truth, the first *Allen* factor. As a result, he argues that the trial court should not have ruled that GKJ was competent to testify.

We review a challenge to a trial court's findings of fact to determine if substantial evidence supports them. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the premise stated. *Id.* at 106. The party challenging the finding of fact bears the burden of demonstrating that the finding is not supported by substantial evidence. *State v. Smith*, 185 Wn. App. 945, 957, 344 P.3d 1244 (2015).

Here, the trial court found that GKJ understood her obligation to tell the truth based on her answers to the prosecutor's questions. GKJ testified that she knew the difference between the truth and a lie and promised to tell the truth. When the prosecutor stated that her jacket was red and asked GKJ if the statement was the truth or a lie, GKJ correctly stated that it was a lie. And when the prosecutor stated that her jacket was black, GKJ correctly stated that it was true. GKJ also promised to tell the truth. This testimony supports the trial court's finding that GKJ could distinguish between the truth and a lie.

WF argues that the court's finding was insufficient to satisfy the first *Allen* factor. He claims that the State did not establish that GKJ understood what it meant to promise to tell the truth or that she knew why it was important to tell the truth in court. However, we hold that GKJ's promise to tell the truth and her demonstrated ability to tell the difference between the truth and a lie was sufficient to satisfy the first *Allen* factor. Accordingly, we hold that the trial court did not abuse its discretion in finding GKJ competent to testify.

B.    ADMISSIBILITY OF CHILD HEARSAY STATEMENTS

WF argues that the trial court erred in admitting GKJ's hearsay statements to her mother, Holland, and Dr. Copeland. He argues that the trial court erred in finding GKJ's hearsay statements reliable because (1) there was no corroborative evidence, and (2) the trial court failed to consider the reliability of each statement separately. We disagree.

1.    Legal Principles

RCW 9A.44.120 states that the otherwise inadmissible hearsay statements of a child witness under the age of 10 are admissible in a criminal case when (1) the statements describe sexual or physical abuse of the child; (2) the court finds that the time, content, and circumstances of the statements provide sufficient indicia of reliability; and (3) either the child testifies at the proceedings or the child's statements are supported with corroborative evidence of the act. RCW 9A.44.120(1), (2)(a), (b); *State v. Kennealy*, 151 Wn. App. 861, 880, 214 P.3d 200 (2009).

In determining whether the child witness's statements are reliable, the trial court must consider nine factors, first discussed in *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984). *Kennealy*, 151 Wn. App. at 880. The trial court must find that the factors are substantially met, but all nine factors need not be satisfied. *Id.* at 881.

Because only the trial court has the opportunity to see and evaluate the child and the other witnesses, it is in the best position to determine the reliability of child hearsay statements. *State v. Pham,* 75 Wn. App. 626, 631, 879 P.2d 321 (1994). As a result, "[t]he trial court is necessarily vested with considerable discretion in evaluating the indicia of reliability." *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003). We review a trial court's decision to admit child hearsay statements for an abuse of discretion. *Kennealy*, 151 Wn. App. at 879.

2. Need for Corroborative Evidence

WF argues that the trial court should have ruled that GKJ was not competent to testify at trial. If GKJ was not competent, she would not have been available to testify and the State would have been required to present corroborative evidence to admit her hearsay statements. WF points out that there was no such corroborating evidence.

However, because we hold above that the trial court did not abuse its discretion in ruling that GKJ was competent to testify, GKJ was not unavailable as a witness. And because GKJ testified at trial, the State was not required to support GKJ's statements with corroborative evidence. RCW 9A.44.120(2)(a), (b).

3. Indicia of Reliability

WF argues that the trial court erred in finding sufficient indicia of reliability to admit GKJ's statements under RCW 9A.44.120. We disagree.

a. Separate Examination of Each Statement

WF argues that the trial court erred by failing to examine the reliability of each of the three statements separately. He cites *State v. Stevens*, 58 Wn. App. 478, 794 P.2d 38 (1990). In that case, the court stated, "The plain language of [RCW 9A.44.120] indicates that the individual

statements are the proper focus of the inquiry," and stated that a trial court should apply the *Ryan* factors to each statement offered in order to properly test reliability. *Id.* at 486-87.

However, the court in *Stevens* also stated that challenges to the trial court's method of analysis could not be raised for the first time on appeal unless under RAP 2.5(a)(3) the challenge involved a manifest constitutional error. 58 Wn. App. at 485-86. The court stated that if both the child declarant and the hearsay recipient testify and are available for cross examination, "no constitutional confrontation or due process concerns arise." *Stevens*, 58 Wn. App. at 486. Therefore, the court held that an error in the method of analysis is not of constitutional magnitude and is not preserved for appellate review if both the declarant and hearsay recipient testified at trial. *Id.*

Here, WF never objected to the trial court's method of applying the *Ryan* factors. Therefore, we hold that WF cannot challenge the trial court's method of analyzing the admissibility of GKJ's statements for the first time on appeal.[3]

        b.    Challenges to Findings of Fact

WF challenges the trial court's findings of fact regarding the first, third, and ninth *Ryan* factors. He claims that substantial evidence did not support these findings. As noted above, we review challenges to findings of fact to determine if substantial evidence supports them. *Homan*, 181 Wn.2d at 105-06.

The first *Ryan* factor is whether the child had an apparent motive to lie. *Kennealy*, 151 Wn. App. at 880. Finding of fact 10 states, "There is no evidence that G.K.J. has any motivation

---

[3] In any event, the trial court did address the statements individually to some extent. The trial court entered separate findings that GKJ's statements to her mother, Holland, and Dr. Copeland were in response to nonleading questions. And the court entered separate conclusions of law regarding both the reliability and admissibility of GKJ's statements to her mother, Holland, and Dr. Copeland.

to lie about the sexual contact with [WF]." CP at 65. WF argues that the trial court's finding that there was " 'no evidence that [GKJ] had any motiv[ation] to lie' " is not supported by substantial evidence because GKJ indicated in her testimony that she did have a motive to lie when she stated that she was worried about being in trouble after WF touched her. Br. of Appellant at 25 (quoting RP at 182).

However, GKJ's mother testified that GKJ had permission to play in the neighborhood and that GKJ and her brother had played with WF at other times. And GKJ indicated in the interview with Dr. Copeland that she is not punished very often. GKJ also stated that she previously had been in trouble when she had not told the truth. Therefore, we hold that substantial evidence supports finding of fact 10.

The third *Ryan* factor is whether more than one person heard the statements. *Kennealy*, 151 Wn. App. at 880. Finding of fact 12 states, "Three independent people heard G.K.J.'s description of what occurred with [WF] ([GKJ's mother], Kim Holland and Dr. Copeland.) The statements G.K.J. made to these three individuals were highly consistent." CP at 65. WF argues that substantial evidence did not support the trial court's finding because GKJ's three descriptions were inconsistent. For example, he argues that GKJ told Holland that the touching had hurt, but stated to Dr. Copeland that the touching did not feel different. In addition, GKJ told Holland that WF had laid her across his stomach, but GKJ's mother testified that GKJ never told her about laying on WF.

However, GKJ's three different accounts were consistent in that they all described the same acts of touching her vagina under her clothes and trying to pull down her pants. GKJ told each of the witnesses that WF had touched her vagina one time and pulled down her pants. And GKJ used consistent language when describing how WF had touched her to each of the

10

witnesses, saying WF had touched her potty part or pee pee spot. The differences in GKJ's statements to the witnesses reflect responses to different questions and do not directly contradict each other. Therefore, we hold that substantial evidence supported finding of fact 12.

The ninth *Ryan* factor is whether the surrounding circumstances suggested that the child misrepresented the defendant's involvement. *Kennealy*, 151 Wn. App. at 880. Finding of fact 17 states, "There was no evidence to suggest that G.K.J. misrepresented [WF]'s involvement." CP at 65. WF argues that the inconsistencies in GKJ's statements to the witnesses are evidence that GKJ might have misrepresented what happened.

However, GKJ's statements differed on insignificant details like the games she had played that afternoon and exactly what the items in the backyard were, but not on WF's involvement. GKJ told each of the witnesses that WF had put his hand inside her clothes to touch her vagina and had tried to pull down her pants. And GKJ told her mother and Holland that WF had offered to let her play on his phone in the backyard. Therefore, we hold that substantial evidence supported finding of fact 17.

### c. Summary

Substantial evidence supported the trial court's findings regarding the first, third, and ninth *Ryan* factors. And WF does not challenge the court's analysis of the other factors. Accordingly, we hold that the trial court did not abuse its discretion in ruling that GKJ's hearsay statements were admissible under RCW 9A.44.120.

## C. SUFFICIENCY OF EVIDENCE

WF argues that without GKJ's testimony or her hearsay statements admitted under RCW 9A.44.120, the State did not present sufficient evidence to prove that he committed first degree child molestation. However, we hold that the trial court did not err in allowing GKJ's testimony

No. 50215-1-II

and admitting her hearsay statements. WF does not argue that the evidence was insufficient if this evidence was admitted. Therefore, we reject WF's sufficiency argument.

CONCLUSION

We affirm WF's adjudication of guilty of first degree child molestation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

BJORGEN, J.

LEE, J.